UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL HART,

    Plaintiff,

v.      Case No. 18-12899

PUBLICIS TOUCHPOINT SOLUTIONS., INC.,      HON. AVERN COHN

    Defendant.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
## (ECF No. 12)[1]

### I. Introduction

This is an employment case. Michael Hart (Hart) is suing his former employer Publicis Touchpoint Solutions (Publicis) claiming his termination was in violation of public policy.[2]

Before the Court is Publicis' motion for summary judgment and/or motion to dismiss on the grounds that Hart has not made out a viable claim that he was terminated in violation of public policy. For the reasons which follow, the motion is GRANTED.

---

[1]Although originally scheduled for hearing, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2]Hart also initially sued his supervisor for tortious interference but later dismissed the claim. See ECF No. 16.

II. Background

The material facts as gleaned from the parties' papers follow.[3]

Hart was employed by Publicis as a professional pharmaceuticals sales representative from December 2012 through September 2016. Publicis is a pharmaceutical marketing company and contracts with pharmaceutical companies to market their products. Particularly, Hart was responsible for marketing drugs produced by Pfizer and was given a territory in Michigan. Pfizer provided him with a list of physicians within his territory who might make use of these drugs in their practice, and on whom he was expected to make in-person sales calls.

Publicis sets requirements for sales representatives to make a specified numbers of calls each week. Sales representatives, including Hart, were required to record their visits in a computer tracking program known as Veeva.

Hart recorded in the Veeva system that he met with Dr. Daniel Field in Dr. Field's office in Okemos, Michigan on May 31, June 27, and September 2, 2016. These dates were all Fridays.

During his employment with Publicis, Hart was supervised by John Williams. At some point, Williams wanted to meet with Dr. Field to ask him to support Medicaid approval for a certain Pfizer drug. When Williams went to Dr. Field's office to set up the meeting, he learned that the office is closed on Fridays and that Dr. Field does not have any meetings on Fridays.

Publicis says that Williams went to Dr. Field's office to set up a meeting and

---

[3]The parties submitted a joint statement of material facts as required by the Court's motion practice guidelines. See ECF No. 19.

learned that the office is closed on Fridays. After discovering Hart's falsification, Publicis terminated his employment, effective September 15, 2018.

The record shows that Dr. Field never met with Hart. Dr. Field stated the following in a declaration:

> I do not typically come to the office or accept appointments on Fridays except by special arrangement. I did not meet with Michael Hart on any Friday during calendar year 2016.

(Publicis Ex. C., ¶3.). At a deposition, Dr. Field testified that he had never met Hart until the date of the deposition, June 28, 2019, nearly three years after Hart's termination.

The same day of his termination, Hart went to Dr. Field's office and tried to convince the staff that he had visited the office on Fridays. Leslie Field, the receptionist, stated the following in a declaration:

> Michael Hart entered Family Counseling and Psychiatry and handed me a list of dates. He instructed me to tell any person that called from his employer's office that he had meetings with Dr. Field on those dates. When I refused to give a false report of meetings that did not occur, he became angry and refused to leave the premises.

(Publicis Ex. E, ¶4.). At a deposition, Leslie Field further described Hart's conduct as follows:

> I was extremely stressed at this point. I had a man demanding that I sign something saying that he was meeting with Dr. Field on these days and that he met with him on Fridays, and I was saying that I could not do that, that I would not sign anything saying that he was here, and he was, he was desperate. I could tell. His tie was untied. He was somewhat disheveled, and I had patients coming in, and he was threatening me.

(Publicis Ex. F, Leslie Field Dep., p. 14.).

For his part, Hart says that the office is open on Fridays but does not typically see patients that day and that Williams was aware of this fact.

III.  Legal Standard

Publicis moves for summary judgment under Fed. R. Civ. P. 56 and for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Because the Court has considered matters outside the pleadings, including declarations and deposition testimony provided by Publicis, the Court will treat the motion as a motion for summary judgment.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot  produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  In so doing, the Court "must view the evidence in the light most favorable to the non-moving party."

4

Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

## IV. Analysis

### A. Legal Framework - Public Policy Claim

In Michigan, there is a strong presumption that employment is terminable at the will of either party; and, generally, an at-will employee may not bring a cause of action for wrongful discharge unless his discharge was prohibited by statute or was "so contrary to public policy as to be actionable." Kimmelman v. Heather Downs Mgmt. Ltd., 753 N.W.2d 265, 268 (Mich. Ct. App. 2008) (quoting Dudewicz v. Norris-Schmid, Inc., 443 Mich. 68 (1993)). Additionally, to make an actionable claim under the public policy exception, a plaintiff must show "that [his] employer asked [him] to violate the law, that [he] refused, and that [his] refusal was one of the reasons that the employer terminated [his] employment." Mills v. United Producers, Inc., 2012 U.S. Dist. LEXIS 126791, at *39-40 (citing Silberstein v. Pro-Golf., 278 Mich. App. 446; 750 N.W.2d 615 (2008)). The cause of action is viable only where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment. Suchodolski v. Michigan Consol. Gas Co., 316 N.W.2d 710, 712 (Mich. 1982).

### B. Application

Hart says he was asked to do three things which he says forms the basis of his public policy claim: (1) provide 60 lunches at a lunch meeting at the request of an office manager; (2) refrain from criticizing his employer in front of a Pfizer representative customer; and (3) arrange a meeting between his supervisor and Dr. Field. He also cites three statutes which he says are implicated in these instances. Each instance is

5

discussed below.

### 1. Lunch at Lansing Pediatrics

The first instance is a lunch Hart hosted at a medical practice known as Lansing Pediatrics on April 29, 2014, two years prior to his termination. According to Hart, he anticipated 32 attendees; however, the office manager at Lansing Pediatrics said she wanted him to bring 60 box lunches. Hart testified during his deposition that he complied with this request and brought 60 box lunches to the lunch meeting.

Further, Hart says that the office manager filed a complaint against him after the lunch meeting. The office manager did complain about Hart, but the complaint had nothing to do with the number of lunches. Rather, the office manger said that during the lunch meeting, Hart was "overly aggressive and verbally abusive" and that he "inappropriately touched a female employee by running [his] finger across her back and commenting on her tattoo." (Publicis Exhibit G.) The office manager also requested that Hart no longer visit their office. Based on this complaint, on May 2, 2014, Hart was issued a final warning which specifically stated that any further failures to comply with his job duties would result in "termination of [his] employment." (Id.)

Hart says that the office manager's complaint was in retaliation for his refusal to violate the Physician Payments Sunshine Act (PPSA), 42 U.S.C. §320a-7h(5)(e). The PPSA is a reporting statute that requires medical device manufacturers to report payments or other transfers of value to physicians and teaching hospitals. 42 U.S.C. § 1320a-7h. Manufacturers that fail to make timely disclosures are subject to civil money penalties for noncompliance. Id. § 1320a-7h(b).

Publicis cites Hall v. St. Jude Med. S.C., Inc., 326 F. Supp. 3d 770 (D.C. Minn.

2018) in support for the argument that Hart has not made out a viable public policy claim based on the PPSA. In Hall, the federal court, applying Michigan law, considered whether plaintiff made out a public policy claim under the PPSA. The plaintiff in Hall alleged he was discharged for refusing to throw a party for a medical office. The court rejected this claim, explaining:

> However, to successfully state a retaliation claim under Michigan law, the employee must have refused to take an action that is actually illegal. An employee who mistakenly believes that an action violates a law cannot state a claim for retaliation, even if the employee's belief is in good faith.

Id. at 782 (internal citation omitted.). The district court explained that the sponsoring of an office party is not a violation of the PPSA because the PPSA is a reporting statute.

The same result obtains here. Hart does not say that he is responsible for filing expense reports under the PPSA, that Publicis required him to file falsified expense reports on any prior occasion, or that he would be required to falsify a report concerning the requested office lunch. Nothing about the luncheon implicated the PPSA. Even if it had, Hart did not refuse to do anything. As he testified, he brought the 60 lunches to the lunch meeting, just as the officer manager requested. In short, the luncheon does not implicate the PPSA such as to support a public policy claim.

### 2. The Dinner Meeting and Subsequent Instruction

The next instance involved a dinner meeting that occurred on November 17, 2015. That meeting included a presentation by a guest speaker about one of Pfizer's pharmaceutical products. Hart attended the meeting and made notes of 15 inaccurate statements the speaker made about the product. Hart says that he arranged a telephone call with a representative of Pfizer to inform him about the misstatements.

7

Hart says that both he and Williams participated in that telephone call, and during the telephone call Williams sent a text message to Hart directing him not to say anything bad about Publicis.

Hart says that Williams' instruction that he not say anything negative about Publicis implicate the Federal Food, Drug, and Cosmetic Act. Specifically, he cites 21 U.S.C. §352 as establishing the public policy on which he bases his claim. This statue prohibits "[t]he adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce." This statute has nothing to do with Hart's allegations. There is no evidence that anyone requested that Hart adulterate or misbrand anything. The allegation was only that his supervisor, Williams, asked him not to criticize Publicis during their customer telephone call.

Moreover, during the conversation with the Pfizer representative and Williams, Hart says he did not say anything critical about Publicis. In other words, Hart did not refuse the request. Rather, he did exactly what Williams asked him to do.

However, Hart says that he was retaliated against for his participation in this telephone call because at a dinner meeting in Las Vegas the next month, in December 2015, Williams asked him not to speak to the Pfizer representatives. This direction does not constitute retaliation as a matter of law. Retaliation must rise to the level of an adverse employment action. An "adverse employment action" is one that affects employment or alters the conditions of the workplace. Burlington N. & Santa Fe Ry. Co. v. White 548 U.S. 53, 62 (2006).

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination

of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Bowman v. Shawnee State Univ., 220 F.3d 456 461-62 (6th Cir. 2000) (quoting Hollins v. Atl. Co., 188 F.3d 652, 662 (6th Cir. 1999).  De minimis employment actions are not materially adverse and are accordingly not actionable.  Id. at 462.  Hart's allegation that his supervisor directed him to refrain from speaking to Pfizer representatives at a single event does not rise to this level.  No reasonable juror could find otherwise.

### 3.  The Dr. Field Letter

As described above, Hart was discharged after Williams discovered that he had falsely reported that he had made sales calls to Dr. Field.  According to Hart, Williams asked him to arrange a time for Williams to meet with Dr. Field.  The purpose of the meeting was for Williams to request that Dr. Field submit a letter to the Michigan Department of Health and Human Services Pharmacy and Therapeutics Committee to support the inclusion of a Pfizer product on the Medicaid approved drug list.  Again, Hart did not refuse Williams' request.  He did exactly as he was asked, and tried to arrange the meeting.

Hart says, however, that this instance involves the Michigan Medicaid False Claims Act and cites M.C.L. § 400.604.  The statute provides:

> A person who solicits, offers, or receives a kickback or bribe in connection with the furnishing of goods or services for which payment is or may be made in whole or in part pursuant to a program established under Act No. 280 of the Public Acts of 1939, as amended, who makes or receives the payment, or who receives a rebate of a fee or charge for referring an individual to another person for the furnishing of the goods and services is guilty of a felony, punishable by imprisonment for not more than 4 years, or by a fine of not more than $30,000.00, or both.

9

There is no evidence that anyone ordered, requested, or in any way suggested to him that he should solicit, offer or receive a kickback or bribe.

### 4. Overall

To avoid summary judgment, Hart must provide some evidence that Publicis directed him to violate some public policy which is established by law. He has not done so. The statutes he relies upon are unrelated to the factual allegations. Hart's own testimony establishes that no one asked him to violate the reporting requirements of the Physician Payments Sunshine Act; that no one asked him to adulterate or mislabel any drug; and that no one asked him to offer or accept a bribe or kickback. Thus, it is clear that Hart was not asked to violate any law, a necessary element of his claim.

Additionally, Publicis is correct that Hart cannot show a causal connection between his discharge and his allegations. It is undisputed that as a sales representative he was required to make a given number of sales calls. It is undisputed that he was required to report his sales calls in the Veeva reporting program. It is undisputed that he reported meetings with Dr. Field during 2016. It is undisputed that he never met with Dr. Field and that he was discharged for falsifying his Veeva report after his supervisor discovered the falsification. Thus, Hart cannot establish this necessary element.

### C. Unpaid Bonus

A public policy claim is only sustainable where there is no statutory remedy available. Vagts v. Perry Drug, 516 N.W.2d 102, 103-04 (Mich. Ct. App. 1994). Where a statute confers upon the plaintiff a method of recovery for an alleged wrong, that person may not also assert a public policy claim. Id. at 104.

To the extent that Hart says he is seeking recovery for the second quarter bonus payment in 2016, he cannot do so within the confines of a public policy claim. Michigan Public Act 390, the Wages and Fringe Benefits Act, M.C.L. § 408.471 et seq., provides the exclusive remedy for recovering allegedly wrongfully withheld bonus payments. Specifically, M.C.L. § 408.471 defines the term "fringe benefit" to include bonuses. M.C.L. § 408.473 requires employers to pay fringe benefits in accordance with their written policy. M.C.L. § 408.481 provides the process for resolving claims for unpaid paid bonuses which includes an administrative investigation, hearing process and eventual appeal to Michigan courts. Michigan courts have held that a claim for breach of public policy is unavailable where the subject of the dispute is one addressed by the Wages and Fringe Benefits Act. See Cork v. Applebee's of Mich., Inc., 608 N.W.2d 62, 64 (Mich. App. 2000). As such, Hart cannot seek his bonus as part of a public policy claim.

### D. Hart's Response

Hart's response fails to meet his summary judgment burden as to any of the instances which form the basis for his claim. First are the statutes on which he bases his public policy claim. Hart says that the PPSA requires manufacturers to report certain payments and transfers of value and when he refused to provide the extra food demanded by the office manager, the act was implicated. However, Hart did not refuse anything. He brought the food the office manager asked for. His action does not implicate any report he may have been required to make.

Next, Hart says that the prohibition in the Food, Drug and Cosmetics Act against misbranding somehow applies to a dinner speaker's remarks. Not so. "Misbranding" is

11

defined by the statute as false "labeling." The statute further defines "labeling" as "labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m). Whatever statements the dinner speaker may have made, they were not labels as defined by the statute.

Finally, he says the anti-kickback and bribery provisions of the Medicaid False Claims Act were implicated when "Williams ordered him to set up a meeting with Dr. Field for the purpose of obtaining his signature on a fabricated letter…." Hart, however, has no evidence to support this assertion. Moreover, Hart does not explain or offer evidence as to what the bribe or kickback was.

In sum, the statutes Hart cites to establish the public policies on which he bases his claim have nothing to do with the instances he relies upon to form the basis of his claim. He has not made out a triable claim for a public policy termination. Summary judgment is warranted.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 11/6/2019
      Detroit, Michigan